MYRTLE HUGHES, Plaintiff-Appellant, v. ST. LOUIS NATIONAL LEAGUE BASEBALL CLUB, INC. (a Corporation), Defendant-Respondent, No. 41511—224 S. W. (2d) 989.

Court en Banc, November 14, 1949.

Rehearing Denied, December 12, 1949.

994

*Lashly, Lashly, Miller & Clifford, John H. Lashly, John B. Sharpe* and *M. P. Phillips* for appellant.

*Carter, Bull, Garstang & McNulty* for respondent; *David A. McMullan* and *Doris J. Banta* of counsel.

HYDE, C. J.—Action for damages for personal injuries. Verdict and judgment for plaintiff; but set aside by the trial court on defendant's motion and judgment entered for defendant in accordance with its motion for a directed verdict. Plaintiff appealed and the Court of Appeals reversed and remanded with directions to reinstate the verdict upon compliance by plaintiff with an order of remittitur. (218 S. W. (2d) 632.) We ordered transfer, under Section 10, Article 5, 1945 Constitution, on application of defendant.

The questions for decision on the merits are whether plaintiff made a case for the jury and whether Instruction No. 1 was erroneous. We must also determine what is preserved for appellate review when a defendant's motion for judgment in accordance with his motion for directed verdict is sustained and its motion for new trial is overruled.

After verdict and judgment for plaintiff, defendant filed a motion to set aside verdict and judgment and to have judgment entered in accordance with its motion for a directed verdict, and in the alternative a motion for new trial in the event the motion to set aside was not sustained. (See Sec. 847.113 Mo. R. S. A.) The motion for new trial alleged error in plaintiff's instructions. The Court sustained the motion to set aside and entered judgment for defendant. It also overruled defendant's motion for new trial.

It was proper for the Court to act on the motion for new trial by overruling it, after sustaining the motion to set aside the verdict and judgment. It was its duty to dispose of it in some manner because all after trial motions should be decided together. The motion for new trial is the basic after trial motion under our Code to preserve trial errors for appellate review; and when disposed of makes the judgment (against which it is directed) final. [Sec's. 847.116 and 847.118 Mo. R. S. A.; Sup. Ct. Rule 3.24; Seabaugh's Dependents v. Garver Lumber Co., 355 Mo. 1153, 200 S. W. (2d) 55.] The Court could have, and our ruling (hereinafter stated) is that it should have overruled the motion to set aside verdict ██ and judgment and sustained the motion for new trial because of prejudicial error in the main instruction. If it had sustained the motion for new trial, and made no order on the motion to set aside, the result would have been the same because Rule 3.24 provides that any other authorized after trial motion not passed on when the motion for new trial is disposed of "shall be deemed overruled as of the same date." However, when the Court believes that the motion to set aside should be sustained but also finds error in instructions, it would be best for it to sustain the motion to set aside and also sustain the motion for new trial, making its ruling thereon in the alternative (specifying its grounds for granting a new trial) to be effective in the event its judgment entered on sustaining the motion to set aside be reversed. [Johnson v. Kansas City Public Service Co. (Mo. Sup.) 214 S. W. (2d) 5; Montgomery Ward & Co. v. Duncan, 311 U. S. 243, 61 S. Ct.

189, 85 L. Ed. 147; Caddell v. Gulf, M. & O. R. Co. (Mo. App.) 217 S. W. (2d) 751.] It is suggested that what we said in the Johnson case about such an alternative ruling was dictum but, if so, it was correct dictum and we now adopt it.

We further hold that when, as here, the motion to set aside is sustained and the motion for new trial overruled (or if it is sustained in the alternative) and the plaintiff appeals from the judgment entered against him, then the defendant may in his brief allege error in instructions or other procedural matters raised in his motion for new trial. This is because the appellate court may consider everything preserved in the record to determine the proper disposition to be made of the case. [See Caddell v. Gulf, M. & O. R. Co., 217 S. W. (2d) l. c. 756-759, which shows that this construction is in harmony with decisions under the old Code.] Section 847.140 gives the appellate court complete authority to consider all of these questions (raised in either motion) and to decide them as it concludes the trial court should have decided them for the purpose of giving or directing the entry of the correct judgment required to properly dispose of the case. This gives effect to the spirit of the Code, by construing it "to secure the just, speedy, and inexpensive determination of every action" (Sec. 847.2 Mo. R. S. A.); and is also within the letter thereof as we have applied it by adopting Rules 3.23 and 3.24. We will, therefore, determine both the question of whether defendant was entitled to a directed verdict and, if not, the question of whether it should have a new trial because of error in instructions.

Plaintiff was injured while starting to cross the playing field at Sportsman's Park in St. Louis after attending a baseball game between St. Louis and Brooklyn. The facts are fully stated in the opinion of the Court of Appeals (218 S. W. (2d) 632), to which we refer, but we repeat the following facts most material on the question of liability. After the game ended plaintiff stepped down from the grandstand on to the field, going through one of three wire gates which opened on to left field. She intended to walk across the field to the Grand Avenue exit at the right field corner, which was opened to permit the crowd to go out there. She had taken about three steps when a negro boy ran into her, causing her to fall and break her right arm at the shoulder. She did not see the boy until he was practically right at her. Her companion, Mrs. Kick, called to her to look out but she was hit just as she called. Mrs. Kick said she saw a group of eight or ten negro boys wrestling and pushing each other, about twelve feet from her; and that, while two of these boys were wrestling, another boy gave them a shove and before she could warn plaintiff they were right at her. Mrs. Kick was just to the left of Mrs. Hughes, between her and the boys, but when she saw them coming so fast she took a step back and although they also hit her she was prepared and did not fall.

George Schroeder, manager of defendant's cushion department, brought the boys into the park under the following circumstances. He needed boys to pick up cushions after each game, and made arrangements for about twenty-five negro boys between fourteen and eighteen years of age to be admitted through an employee's gate near the left field corner about the 7th or 8th inning of each game. He issued special cards to them and put their names on a list, which was left at the gate. The watchman there knew most of them, and would let them in. The number of the boys actually used each day depended upon the size of the crowd; but there were eight or nine regular boys who were used every day. They knew they would work so they would start as soon as the crowd left the stands, beginning by taking the cushions out of the left field wing of the grandstand. The other boys would wait until Mr. Schroeder came around to see if he would need them. Immediately after each game, he would go to one of the main entrances and watch the crowd to see they did not carry away any of the cushions. The boys would wait for him in the left field area. When there was a large crowd he would be likely to use all of the boys, and on the day plaintiff was injured there was a full capacity crowd. Apparently when plaintiff was injured the crowd was still coming out of the stands and the work of picking up cushions had not yet started. Schroeder said he was at the entrance about fifteen minutes before he came to meet the boys. At that time he found plaintiff there injured, and being attended by a nurse on duty for defendant.

Schroeder said that he made no arrangements for supervision of the boys before he met them. He testified as follows concerning his knowledge of their activities prior to starting work.

"Q. What have you seen them do, Mr. Schroeder? A. I have never seen them out amongst the crowds pushing one another around, but I have seen them, like young fellows will do, playing around with one another.

"Q. Pushing each other around? A. A little, but it wouldn't be any really rough wrestling or anything like that.

"Q. Anybody hit at one another or kind of push one another? A. Might do something like that, yes.

"Q. How many times have you seen them do that before this October 1, 1946? A. Well, I wouldn't know exactly. I was there a few times, I guess, when I saw them do things like that. . . .

"Q. Have you ever cautioned them against doing that? A. Well, I have a time or two, yes.

"Q. You mean sometimes when you see them engaging in this, in these activities you have described, you don't warn them and sometimes you do? Is that what you meant by your answer? A. It is usually at the time they start picking up cushions and I tell them,

let's start working, and that breaks it up. . . . Any time I have seen them I warned them to quit it.''

Defendant contends that this evidence was not sufficient to show notice to defendant of such rough activities as would create a condition dangerous to its patrons so as to place on it the duty to furnish supervision over them. Plaintiff's position, at least in the theory of its main instruction, seems to be that assembling such a number of boys of their age at such a place would of itself (because of the natural tendency of boys to engage in rough play) require the duty of supervision.

''The care required of the proprietor of a place of public amusement is that which is reasonably adapted to the character of the exhibitions given, the amusements offered, the places to which patrons resort, and also in some cases, the customary conduct of spectators of such exhibitions, . . . care commensurate with the particular conditions and circumstances involved in the given case.'' Berberet v. Electric Park Amusement Co., 319 Mo. 275, 3 S. W. (2d) 1025, 1029, 61 A. L. R. 1269, and cases cited; see also 26 R. C. L. 712, §§ 4-15; 62 C. J. 863, §§ 46-59; Annotations 22 A. L. R. 611, 29 A. L. R. 29, 44 A. L. R. 204, 53 A. L. R. 856, 61 A. L. R. 1290, 98 A. L. R. 558. These authorities also hold that a paying patron of such a place is not required to make a critical examination of the premises to determine their safety but may assume that proper precautions have been taken for his safety by those in charge. 62 C. J. 875, §§ 68-75 Annotations 22 A. L. R. 616, 29 A. L. R. 30, 53 A. L. R. 857, 61 A. L. R. 1291 98 A. L. R. 560. [Brown v. Reorganization Investment Co., 350 Mo. 407, 166 S. W. (2d) 476; see also Blakeley v. White Star Line (Mich.) 118 N. W. 482, 19 L. R. A. (N. S.) 772; Hill v. Merrick (Ore.) 31 Pac. (2d) 663; Quinn v. Smith Co., Inc. (C. C. A. 5th) 57 Fed. (2d) 784; Murphy v Winter Garden & Ice Co., (Mo. App.) 280 S. W. 444.] It is likewise stated in 52 Am. Jur. 296, Sec. 52: ''One who invites the public to his theater or public amusement owes to all persons who accept the invitation the duty of reasonable care to protect them from assault, abuse, or injury at his hands or those of his servants, employees, or agents. . . . He is also under duty to protect patrons from injury resulting from the acts or conduct of other patrons and third persons, and is chargeable with liability for injuries suffered by reason of such acts or conduct.''

The last sentence is too broadly stated as a general proposition. Nevertheless, proprietors of a place of public amusement may not, without liability, permit activities of third persons, which are dangerous to patrons, to continue, after they know or by the exercise of reasonable care could have known of them, when by the exercise of reasonable care they could have been able to protect patrons therefrom by controlling or preventing such activities. [See American Law Institute Restatement of Torts, Sec. 348.] Defendant says that

the evidence does not show that it could have discovered any danger-ous activities of the boys in time to have protected plaintiff from them, arguing that they were so spontaneous and sudden in their commencement and effect that there was no time to even warn plaintiff after they began. Defendant cites cases, such as Whitfield v. Cox, (Va.) 52 S. E. (2d) 72 and Hawkins v. Maine & New Hampshire Theaters Co., (Me.) 164 Atl. 628. However, these cases are not in point because they involve isolated, sudden acts of one person. Likewise, defendant's argument is confined to the occurrence of that particular day and ignores the fact that Schroeder had previously observed similar activities of this group on several occasions and had found it necessary to warn the boys against them and to break them up. We think the evidence was sufficient to warrant a jury finding that, after such notice and observation of their activities, it might reasonably have been foreseen that they could cause injury to patrons leaving the stands through the area, where the cushion pickers were required to assemble and remain, if they were left there without any organization, regulation or supervision.

Defendant says that to hold it liable herein would require it to furnish supervision for all groups of boys attending games, even including Boy Scouts, Sunday School classes and similar organizations. Here again defendant does not distinguish between occasional attendance of various groups of boys at games and observed improper conduct of a regular group brought in every day by it to serve its own purposes. Plaintiff does not base her claim on respondeat superior on the theory that the boys were defendant's employees, although the regular boys who knew they would work every day were perhaps at least casual workers. Her theory of liability is that, by bringing these boys into the park after every game and requiring them to assemble and remain, without any supervision or regulation as to their conduct, in an area through which many patrons usually passed to leave the park, it created a condition dangerous to them because of the activities in which these boys customarily engaged. Since we find the evidence sufficient to show defendant's knowledge of usual activities of this particular group of boys while assembled at this place after games, which would be likely to cause injury to patrons, we hold that plaintiff made a jury case on this theory.

Defendant further contends that Instruction No. 1 was prejudicially erroneous. It states as its principal objections to this instruction that it permitted the jury to find defendant guilty of negligence "without requiring a finding that the boys were boisterous or engaged in rowdy tactics with the knowledge of the defendant;" and that no finding was required that "a situation was thereby created which was unsafe for patrons of the ball park."

■ Instruction No. 1, after hypothesizing the facts concerning plaintiff's injury, continued: "And if you further believe and find

from the evidence that defendant, ▮▮▮▮ its agents or employees had permitted and directed said group of young Negro boys described in the evidence as cushion pickers to gather and congregate, if you so find, in close proximity to plaintiff and others leaving said ball park, if you so find; and if you further find that said group of boys had engaged in pushing, shoving, and wrestling in close proximity to patrons of defendant's ball games on several occasions prior to October 1, 1946, if you so find; and if you further believe and find from the evidence that defendant failed to supervise or preserve order in said group of boys, if you so find, when defendant, its agents or employees, if you so find, knew, or by the exercise of ordinary care could have known, that without a supervision or means of preserving order the said group of boys, or any of them, if you so find, would engage in pushing, shoving, and wrestling in close proximity to plaintiff and others there present, if you so find, and would thus and thereby endanger the safety of plaintiff and others, and if you find that defendant in failing to supervise or preserve order as aforesaid, if you so find, was then and there guilty of negligence, and that plaintiff was injured as a direct and proximate result of the aforesaid negligence, if you so find from the facts that the defendant was guilty of negligence, as aforesaid, then your verdict must be in favor of the plaintiff and against the defendant.''

We think these objections are well taken. The basis of plaintiff's case must be notice to defendant by previous knowledge of the conduct of these boys creating a situation or condition in that area unsafe for patrons leaving the stands by that route. [See Illustrations 2 Restatement of Torts 955, under Sec. 348; Prosser on Torts 643, Sec. 79.] We cannot go so far as to say that it would be negligence to ever assemble any group of boys there for such a purpose without supervision because we cannot hold that it could reasonably be foreseen that doing so would be likely to create a dangerous condition to patrons. ''Negligence' which imposes liability must result from a faulty or defective foresight. (Not hindsight.) . . . On what should have been anticipated, rather than what happened.'' [McCollum v. Winnwood Amusement Co., 332 Mo. 779, 59 S. W. (2d) 693; Nephler v. Woodward, 200 Mo. 179, 98 S. W. 488; Panke v. Shannon, 357 Mo. 1195, 212 S. W. (2d) 792.] However, as we have held, the evidence as to the continuing conduct of these boys, observed by defendant's cushion department manager over a considerable period, was sufficient to support a finding that it might reasonably have been foreseen that its continuance at this place after games could cause injury to patrons. It was from this situation that a duty to supervise would arise and this basis of liability was not submitted to the jury by Instruction 1.

This instruction did require a finding that these boys ''had engaged in pushing, shoving and wrestling in close proximity to patrons'' but

nowhere did it require a finding that the defendant had knowledge of such conduct previously or even that it had continued for such a period of time that defendant in the exercise of reasonable care should have known of it. It only required a finding that it knew (or could have known) that these boys "would engage in pushing, shoving and wrestling in close proximity to plaintiff and others." However, the basis of such a finding on the evidence in this case would have to be defendant's knowledge that such conduct had previously occurred; and this could not merely be assumed or inferred from the fact that defendant authorized a group of boys to be assembled there or that they had engaged in such activities unknown to it. Defendant would only be required to take action when it had reason to believe, from what it had observed or from past experience, that the conduct of these boys would be dangerous to its patrons (Prosser, Sec. 79); and that was the fact issue which should have been submitted to the jury. In other words, the defect of this instruction is that it seems to be based on the premise that it could reasonably be anticipated that assembling any group of boys at such a time and place would create a dangerous situation for the results of which defendant ▮▮▮ would be liable. We, therefore, hold that giving this instruction was prejudicial error.

The judgment is reversed and cause remanded for a new trial. All concur.