**BURKE**

v.

**STIX, BAER & FULLER CO.**

No. 43693.

Supreme Court of Missouri.
Division No. 2.

Feb. 8, 1954.

Moser, Marsalek, Carpenter, Cleary & Carter, Lee M. Carter, Walter K. Streutker, St. Louis, for appellant.

Champ C. Stonebraker, St. Louis, for respondent. Dyer, Boland, Gray & Dreher, Charles E. Gray, St. Louis, of counsel.

WESTHUES, Commissioner.

Plaintiff filed this suit to recover damages in the sum of $10,000 for alleged injuries claimed to have been sustained as a result of being stepped on by a waitress in the defendant's restaurant. A jury trial resulted in a verdict for the defendant. The trial court sustained plaintiff's motion for new trial on the ground that the court erred in giving an instruction on the theory that plaintiff's injuries were the result of an accident. From this order, the defendant appealed.

Defendant on this appeal concedes that an instruction on accident should not have been given. Defendant contends, however, that plaintiff's evidence was insufficient to sustain a finding of negligence and, therefore, plaintiff is in no position to complain. Therefore, the sole question before us is whether the evidence made a case for a jury.

The evidence was that plaintiff and her husband entered defendant's cafeteria about 7:00 P.M., on December 21, 1951. They selected their food and plaintiff, carrying a tray with her food thereon, walked toward a table near a window while her husband paid the bill. At this point we deem it best to quote plaintiff's evidence as to what occurred:

"Q. What did you do when you went inside the restaurant? A. Well, we walked up to the counter and ordered our food and in a cafeteria I do like to get a window table and I was going to go to a window table and I turned with my tray and just took a few steps and I saw this bus girl at the table to my right and she was either wiping the table or picking dishes up, I don't know which, but she picked up her tray and turned around, * * *

\*   \*   \*   \*   \*   \*

"The Witness (resuming): She turned around with her tray and stepped backward with her left heel on my right foot.

"Q. (By Mr. Stonebraker) Were there other people carrying trays? Were there customers carying trays at that time? A. There were some at the counter. I suppose they were going to seats, too.

"Q. From what you could observe that evening, was that the customary practice of the customers, getting their food, going to the table, carrying their own tray, is that correct? A. That is right, yes.

"Q. As you walked toward this table, which was near the window, were you walking down an aisle or between tables or just how were you doing? A. Just between rows of tables.

"Q. Between rows of tables? A. Yes.

"Q. Your husband was with you at that time, was he? A. Yes, that's right.

"Q. How far were you from the table where you had intended to sit at the time this girl stepped on you? A. Well, I was at the—Oh, I imagine I was 7 or 8 feet, whatever the length of their tables are, plus an aisle, and it was the end of the other table.

"Q. After the girl stepped on your foot, what did you do? A. Of course, it unbalanced me and my tray was naturally upset a bit in my hand but I was right at a table, I got it to the table and held on to the table for a little support and the coffee on my tray spilled * * *."

Plaintiff's husband testified as follows:

"Q. And what did you do when you went in, sir? A. We went up to the counter and selected our food and had our trays—

"Q. Then what happened? A. Well, the wife turned around to go to the table, while I was paying for the trays, and then I heard the dishes rattle and I went around to where she was and she was leaning on a table, the tray was on a table, and I asked her what had happened and she said she had been stepped on and the coffee had spilled and her foot was in very much pain.

"Q. Was there anyone standing near her at that time? A. Yes, there was a waitress.

"Q. Could you tell, was she in a waitress' uniform? A. Yes, she was in uniform.

"Q. Did she have anything in her hand? A. No, not at the time I saw her, she had put down the tray she had."

The only evidence introduced by the defendant was with reference to plaintiff's injuries. Plaintiff's injuries consisted of a comminuted fracture of the fifth metatarsal bone of her right foot. The injury resulted in some deformity and occasioned plaintiff some difficulty in walking. According to a doctor's testimony, the injury was permanent.

As a general rule, the question of whether particular acts causing an injury constitute negligence is for a jury. 65 C.J.S., Negligence, § 253, p. 1136, and numerous cases there cited. Swain v. Anders, 349 Mo. 963, 163 S.W.2d 1045, loc.cit. 1051 (13). Plaintiff was an invitee and the defendant and its servants were obligated to exercise ordinary care for her safety. 57 C.J.S., Master and Servant, § 575c, p. 334; 65 C.J.S., Negligence, § 45c, p. 533.

Defendant in the argument of the brief correctly stated the rule applicable to this case. It reads as follows: "Defendant and its employee were required to exercise ordinary care, that is, care which the average person in the position of the bus girl would be expected to exercise under same or similar circumstances. Plaintiff had the burden to show that such care was not exercised and it was an essential element in plaintiff's case to establish that defendant's

employee knew, or in the exercise of ordinary care should have known that the plaintiff was in dangerous and close proximity to her, and that she knew, that by stepping backward she would likely step on the plaintiff."

 Did the employee know or should she have known in the exercise of ordinary care, "that the plaintiff was in dangerous and close proximity to her, and that she knew, that by stepping backward she would likely step on the plaintiff"? If we keep in mind that defendant's place of business was a cafeteria where patrons carried trays of food to the tables, and that plaintiff was in the aisle where patrons walked, we conclude that the employee should have known that if she stepped backward without looking, she might come into contact with a patron. We are of the opinion that the evidence was sufficient to require the submission of the question of negligence to a jury. Hughes v. St. Louis National League Baseball Club, 359 Mo. 993, 224 S.W.2d 989, loc. cit. 993 (6–8), 16 A.L.R.2d 904; Salmons v. Dun & Bradstreet, 349 Mo. 498, 162 S.W. 2d 245, 141 A.L.R. 674.

Defendant cites two cases in support of its theory that the evidence was insufficient. The cases are easily distinguishable. In Greene v. Sibley, Lindsay & Curr Co., 257 N.Y. 190, 177 N.E. 416, a customer, while in the defendant's place of business, stumbled over an employee kneeling on the floor while examining a cash register. The court held that the plaintiff by a mere glance could have discovered the employee kneeling by the register. It may also be noted that the plaintiff walked against the employee, not the employee against the plaintiff.

In the other case, Dickinson v. Eden Theatre Co., 360 Mo. 941, 231 S.W.2d 609, a newspaper vendor in the outer lobby of the defendant's theatre collided with plaintiff, a patron, and knocked her down. The vendor was not an employee of the defendant. This court held, 231 S.W.2d 612 (3, 4), that the presence of the newspaper vendor in the lobby was not inherently dangerous to patrons; that the evidence was insufficient to sustain a finding that the defendant had notice of a likelihood of injury to patrons of the theatre by the presence of the vendor.

 In the case before us, the trial court was authorized to submit the case to a jury. Since defendant concedes that the instruction on accident should not have been given, the trial court's order granting a new trial should be sustained and the cause remanded.

It is so ordered.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.

All concur.