**Sterling FERGUSON and Frances Ferguson, Appellants,**

v.

**John GINN and City of Ellington, Respondents.**

**No. 12411.**

Missouri Court of Appeals, Southern District, Division Three.

May 16, 1983.

David G. Neal, Eminence, for appellants.

No appearance for respondent John Ginn.

V. Kenneth Rohrer, Roberts, Roberts & Rohrer, Farmington, for respondent City of Ellington.

CROW, Presiding Judge.

On Sunday, October 24, 1976, sometime between 2:00 and 4:00 p.m., Sterling Ferguson and his wife, Frances, accompanied by Frances' older sister and the latter's granddaughter, went to a trash dump owned by

the City of Ellington ("the City") to look for books and magazines. The dump abuts the east side of highway 21 north of the City.

John Clay Ginn and his father-in-law, Burl Stout, were already there, intending to shoot rats with a .22 caliber pistol. Sterling and Frances entered the dump on foot. A few minutes later Ginn fired a shot, striking Sterling in the left leg just below the knee. Sterling "hollered," and almost simultaneously Ginn fired a second shot, striking Frances in the left leg just above the knee.

Sterling and Frances sued Ginn and the City. A jury returned verdicts in favor of both defendants, and judgment was correspondingly entered. Sterling and Frances appeal, alleging the trial court erroneously instructed the jury on contributory negligence.

We first consider the issues between appellants and Ginn. A verdict directing instruction was given on Sterling's claim against Ginn, submitting the theory that Ginn negligently "discharged a firearm in the direction of or close to" Sterling. A verdict directing instruction was given on Frances' claim against Ginn, submitting the theory that Ginn negligently discharged a firearm in Frances' direction or close to her.

With respect to Sterling's claim against Ginn, the jury was instructed that its verdict must be for Ginn if the jury believed Sterling was negligent in any one or more of three respects, and that such negligence directly caused or directly contributed to cause any damage Sterling sustained.[1] One of those respects was that Sterling failed to give an adequate warning of "their location." A similar instruction was given regarding Frances' claim against Ginn.[2]

Ginn testified he saw appellants enter the dump at approximately the northwest corner, some 40 to 50 yards to his right. Ginn said he shot toward the southwest, at an "angle" to the direction where appellants were standing. According to Ginn, he never pointed the pistol toward appellants. Ginn explained he shot at a rat, which was moving to his left, and a bullet must have "ricocheted."[3]

■ A plaintiff's negligence bars recovery against a negligent defendant only if the plaintiff's negligence is shown to have concurred with the negligence of the defendant and contributed to the plaintiff's injury as a proximate cause. *McConnell v. Pic-Walsh Freight Co.*, 432 S.W.2d 292,

1. Instruction 9, given at Ginn's request, said: "Your verdict must be for Defendant John Ginn on Plaintiff Sterling Ferguson's claim for damages if you believe:
   First, either:
   Plaintiff Sterling Ferguson failed to keep a careful lookout, or
   Plaintiff Sterling Ferguson failed to give an adequate warning of their location to Defendant Ginn, or
   Plaintiff Sterling Ferguson failed to inspect said premises to insure no one was discharging a firearm before entering the trash dump, and
   Second, Plaintiff Sterling Ferguson, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and Third, such negligence of Plaintiff Sterling Ferguson directly caused or directly contributed to cause any damage Plaintiff Sterling Ferguson may have sustained."

2. Instruction 16, given at Ginn's request, was identical to instruction 9 (footnote 1, supra) except that the name "Frances" was substituted for the name "Sterling" in the introductory paragraph. That change was not made any-

place else in instruction 16. All references to a plaintiff in paragraphs First, Second and Third of instruction 16 were to Sterling, not Frances. Instruction 16 contained no reference to Frances' conduct. The instruction thus made Sterling's contributory negligence, if any, a defense to Frances' claim—an apparent misdirection. This may have simply been an oversight. During the instructions conference several instructions, including instruction 16, were amended by handwriting, and the mishap, if it be that, may have occurred then. In any event, the matter is not mentioned in appellants' motion for new trial or brief, and is therefore not before us for review. Rule 84.13(a), Missouri Rules of Civil Procedure; *Feste v. Newman*, 368 S.W.2d 713, 714[1] (Mo. banc 1963).

3. The bullet that struck Sterling passed through his leg and exited, as did the bullet that struck Frances. No bullet was recovered. Sterling and Frances were standing near each other when they were hit. Ginn's theory at trial was that one bullet caused both injuries.

297[7] (Mo.1968); *Hoover v. Gray,* 616 S.W.2d 867, 869[5] (Mo.App.1981).

Here, Ginn admitted he knew where appellants were when he shot. A warning could not have made him any more aware of their location than he already was. Thus, so far as Ginn is concerned, the absence of a warning could not have been a proximate cause of appellants' injuries. A defendant may not rely on a defense which has been directly repudiated by his own testimony. *Clinton v. Staples,* 423 S.W.2d 1, 4[10] (Mo.App.1967). Ginn's testimony eliminated failure to warn as an affirmative defense to the claims against him. *Rucker v. Alton R. Co.,* 343 Mo. 929, 123 S.W.2d 24, 26[9] (Mo.1938). As to those claims, it was error to submit failure to warn as a theory of contributory negligence. *Strauss v. Hotel Continental Co. Inc.,* 610 S.W.2d 109, 112[3, 4] (Mo.App. 1980).

If one assignment of negligence is erroneously included in a multiple disjunctive submission of contributory negligence, the instruction is erroneous. *Saupe v. Kertz,* 523 S.W.2d 826, 830[4] (Mo. banc 1975). The error is prejudicial, and requires a new trial of the issues between appellants and Ginn.[4] *Gilpin v. Pitman,* 577 S.W.2d 72 (Mo.App.1978).

We now consider the issues between appellants and the City. The City moved for a directed verdict in its favor at the close of appellants' case. One of the grounds in the motion was that appellants failed to make a submissible case against the City. The trial court denied the motion. The City made a similar motion at the close of all the evidence, and received the same ruling. The City assigns error. The point is preserved for appellate review. *Frisella v. Reserve Life Insurance Co. of Dallas,* 583 S.W.2d 728, 731[1] (Mo.App.1979). Where a plaintiff appeals asserting trial error and a claim is made by a defendant that no submissible case was made, that issue is reviewable. *R.H. Macy & Co. v. Bell,* 531 S.W.2d 58, 61[1] (Mo.App.1975). The issue must be addressed, because if the evidence failed to make a submissible case against the City, appellants' allegations of instructional error are immaterial. *R.H. Macy & Co. v. Bell,* supra, 531 S.W.2d at 61; *Osborn v. McBride,* 400 S.W.2d 185, 188[1] (Mo. 1966).

Appellants' claims against the City were submitted to the jury on the theory that the dump was not reasonably safe because "there was a discharge of firearms" there, that the City knew this and appellants did not, that the City knew or should have known that appellants were unaware of the danger, and that the City negligently failed to barricade the dump or warn of the danger.[5]

---

4. Appellants also complain of error in the other two submissions of contributory negligence in the instructions given at Ginn's request. Having found the submission of failure to warn prejudicially erroneous, we need not rule on the others.

5. Instruction 10, given at Sterling's request, said:

"Your verdict must be for plaintiff Sterling Ferguson and against defendant City of Ellington if you believe:

First, there was a discharge of firearms at defendant City of Ellington's municipal trash dump and as a result the premises were not reasonably safe, and

Second, defendant City of Ellington knew of this condition and knew that such condition was not reasonably safe, and

Third, plaintiff Sterling Ferguson did not know and by using ordinary care could not have discovered that such condition was not reasonably safe, and

Fourth, defendant City of Ellington knew or in the exercise of ordinary care should have known that plaintiff Sterling Ferguson did not know and by using ordinary care could not have discovered that such condition was not reasonably safe, and

Fifth, defendant City of Ellington failed to use ordinary care to barricade the municipal trash dump or warn of the discharge of firearms at the municipal trash dump, and

Sixth, such negligence either directly caused damage to plaintiff Sterling Ferguson or combined with the acts of defendant John Ginn to directly cause damage to plaintiff Sterling Ferguson.

Unless you believe plaintiff Sterling Ferguson is not entitled to recover by reason of Instruction Number 11."

Instruction 11 was a contributory negligence instruction given at the City's request. Instruction 17, given at Frances' request, was identical to instruction 10 except that the name "Fran-

The only direct evidence that shooting had occurred at the dump before October 24, 1976, was the testimony of a former city marshal that he and another officer had gone target shooting there "maybe twice a year," the last time being in May, 1976. The witness testified the City Counsel [sic] knew about the target shooting and directed that it be done when no one else was there. The witness also testified he heard other people say they were going to discharge firearms at the dump, but the trial court ordered that testimony stricken as hearsay. The witness opined it was "pretty much common knowledge" that people had gone to the dump to shoot guns, and that "people shoot rats at dumps." [6]

Appellants cite authority [7] for the proposition that a municipality owes a duty to individuals entering upon its property with its express or implied consent to keep that property free from or warn of any dangerous conditions existing on the premises. Here, however, the danger upon which appellants base their claims was not inherent in the dump itself, but instead arose from the discharge of a firearm by a third person. Appellants do not contend there was anything intrinsically dangerous about the dump. Danger existed, if at all, only when someone went there and shot a gun. Thus, this case falls among those involving the liability of a landowner for harm to others caused by third persons on his premises, the most recent of which is *Virginia D. v. Madesco Investment Corp.,* 648 S.W.2d 881 (Mo. banc 1983).

In *Virginia D.,* the female plaintiff was sexually molested by a male intruder in a ladies' restroom of a downtown St. Louis motor hotel. She sued the hotel, submitting her case to the jury on the theory that there was a danger that an assailant might attack a person in the restroom, that the restroom was therefore not reasonably safe, that the hotel knew or by using reasonable care should have known of the condition, and that the hotel failed to use ordinary care to make the restroom reasonably safe. She obtained a verdict, but the trial court set it aside and entered judgment for the hotel. There was substantial evidence that undesirable persons with no proper business at the hotel entered with some regularity and caused concern to management. Car tampering, vandalism, prostitution and theft had occurred on hotel property, but no recent violent crime. The hotel had only one security officer and he did not regularly visit the area where the restroom was located. A gate could have been installed in the main lobby to prevent access to the area where the restroom was situated when that area was not in use, but management rejected the idea because of its effect on the decor. A television monitor could have been installed for surveillance of the area, but was not. There was expert testimony that the design of the restroom itself enhanced the danger.

Noting that the "special relationship" between innkeepers and their guests imposes affirmative duties of protection, the Supreme Court of Missouri, in a four to three decision, held the jury could find that the evidence of past incidents was sufficient to alert management to the possibility of crime on the premises, so as to invoke the duty of exercising an appropriate degree of care to protect guests from "criminal victimization." The Supreme Court held the jury might have concluded that precautions were available which might have increased the chances of dissuading the attacker from entering the ladies' room, of discovering his entry, or of interrupting him before he caused substantial harm to plaintiff. The

---

ces" was substituted for the name "Sterling" each place the latter appeared. At the end of instruction 17, reference was made to the pertinent contributory negligence instruction.

**6.** Appellants offered testimony from another witness regarding shooting at the dump, but the offer was refused because the witness' identity had not been disclosed during discovery. The ruling was not assigned as error

in appellants' motion for new trial, and is therefore not preserved for appellate review. *Schneider v. Finley,* 553 S.W.2d 727, 732[14] (Mo.App.1977).

**7.** *Behnke v. City of Moberly,* 243 S.W.2d 549 (Mo.App.1951); *Lewis v. Kansas City,* 233 Mo. App. 341, 122 S.W.2d 852 (Mo.App.1938).

Supreme Court noted that evidence of feasibility and cost could have been presented to the jury. The Supreme Court ruled that the question whether the hotel exercised the proper degree of care under the circumstances, and the question of causation, were issues to be decided by the jury and should not have been preempted by the trial court. The judgment was reversed and the cause remanded with directions to enter judgment for plaintiff on the verdict. The three dissenting judges found that nothing in the evidence suggested that the hotel had a reasonable basis for anticipating the attack on plaintiff, and that the majority opinion imposed strict liability on innkeepers.

In other Missouri cases in which injured persons sought recovery from landowners for injuries caused by third persons, the pivotal issue—as in *Virginia D.*—appears to have been whether the injury-causing act could have been reasonably foreseen.

In *Gold v. Heath*, 392 S.W.2d 298 (Mo. 1965) a child was struck in the eye by a rock thrown by another child in a drive-in theater playground area during business hours. The trial court directed a verdict against the injured child at the close of his evidence. The Supreme Court held the evidence showed that the tortious act was a single, isolated, sudden and unprovoked act which could be neither reasonably foreseen nor prevented. 392 S.W.2d at 307. Judgment for the theater was affirmed.

In *Rush v. Townsend and Wall Co.*, 343 S.W.2d 44 (Mo.1961) an elderly store patron fell on stairs when "jostled" by small children. The plaintiff submitted her case to the jury on the theory that the stairs were unsafe, and obtained a verdict. On appeal, the Supreme Court held that the evidence was insufficient to support the theory submitted; moreover, the store was not liable for the misconduct or negligent acts of third persons not acting under its direction or control or which it could not reasonably have anticipated and guarded against. 343 S.W.2d at 50. *Plaintiff's judgment was reversed.*

*Rush* was cited in *Pizzurro v. First North County Bank & Trust Co.*, 545 S.W.2d 348 (Mo.App.1976). There, a woman went to the bank to meet her husband. The husband, anticipating problems, got permission from a bank official to leave through a back door. The woman became suspicious and asked a bank employee to call the police, but no call was made until after a second request ten minutes later. Thereafter, the woman saw her husband and tried to stop him from departing. He "swiped" her with his elbow, knocking her unconscious. She sued the bank on the theory of negligence in failing to call the police when first asked. The trial court directed a verdict against the woman for failure to make a submissible case. The Court of Appeals affirmed, holding that the bank had no knowledge or information which would indicate that any sort of violent disturbance might take place until a brief period before the injury, and that under the circumstances the bank was not given a reasonable opportunity to anticipate a violent assault. 545 S.W.2d at 350.

In *Oliver v. Oakwood Country Club*, 245 S.W.2d 37 (Mo.1951) a teenage boy was shot in the eye by an air gun discharged by another teenage boy while both were approaching the caddy house at a golf course to await assignments. The trial court sustained a motion for directed verdict at the close of plaintiff's evidence. The Supreme Court affirmed, finding there was no evidence that the landowner had ever permitted possession of air guns or was apprised of any practice of possessing air guns on its premises. The Supreme Court ruled the evidence left an essential element of plaintiff's case, *i.e.* landowner's knowledge of the dangerous condition, wholly to conjecture. 245 S.W.2d at 42.

Another shooting case in which the plaintiff was unsuccessful is *Leverton v. Hartstein*, 365 S.W.2d 60 (Mo.App.1963). There, two employees of a drive-in theater were target shooting on theater property and one of the bullets struck the plaintiff in her home several hundred feet away. Plaintiff sued the theater proprietor. The trial court set aside a verdict for plaintiff and the Court of Appeals affirmed. Plaintiff's the-

ory of liability was *respondeat superior* rather than landowner liability for a dangerous condition; nonetheless, it is noteworthy that the Court of Appeals found the proprietor did not direct or in any way authorize the employees to keep firearms or do any shooting on theater premises, and was unaware that guns were kept there. 365 S.W.2d at 62.

In *Hughes v. St. Louis National League Baseball Club, Inc.,* 359 Mo. 993, 224 S.W.2d 989 (Mo. banc 1949) the Supreme Court held the plaintiff made a submissible case on the issue of foreseeability. There, a woman was knocked down when a boy ran into her while she was crossing the playing field at a baseball stadium after a game. The boy and several companions had been admitted to the stadium by management to pick up seat cushions. On past occasions their supervisor had observed them in horseplay, and had warned them about it. The boys were under no supervision at the time plaintiff was injured, and had been wrestling and pushing each other just before plaintiff was felled. A verdict for plaintiff was set aside by the trial court and judgment was entered for defendant. The Supreme Court held it was for the jury to determine whether defendant had reason to believe, from what it had observed or from past experience, that the conduct of the boys would be dangerous to the patrons. 224 S.W.2d at 995. Negligence, which imposes liability, must result from a faulty or defective foresight, and not hindsight, and on what should have been anticipated, rather than what happened. *Id.* The Supreme Court reversed the judgment for defendant, but found error in plaintiff's verdict directing instruction and remanded for a new trial.

A more recent, and unique, case is *Scheibel v. Hillis,* 531 S.W.2d 285 (Mo. banc 1976). There, Scheibel pleaded that Hillis should have foreseen that harm would be caused by one specific individual (Joyner). Scheibel alleged he was shot by Joyner at Hillis' residence, that Joyner used a gun kept there by Hillis as protection against Joyner, that Hillis knew of prior mischievous, wanton and brutal acts committed by Joyner, that Hillis notified Joyner of the presence of the gun, that Hillis kept the gun in a place where Hillis knew or should have known that Joyner was likely to use it, so as to create an unreasonable risk of harm to Scheibel and others, and that Hillis failed to warn Scheibel of Joyner's dangerous propensities. The trial court dismissed the petition as to Hillis for failure to state a cause of action. The Supreme Court held the petition sufficient to withstand a motion to dismiss, and remanded.[8]

An earlier case involving shooting at a residence is *Charlton v. Jackson,* 183 Mo. App. 613, 167 S.W. 670 (Mo.App.1914). There, the parents of a 13-year-old boy were held liable to a visitor in their home who was shot by the boy. Evidence showed the boy was reckless, careless and indiscreet. He had pointed the gun at the victim, a neighbor, a few days earlier, and the parents knew this. The parents were held liable for negligence in allowing the boy access to the gun, knowing his disposition.

■ Applying what we perceive as the rationale of the cases just discussed, we hold the evidence failed to make a submissible case against the City.

There was no evidence of prior criminal conduct at the dump, nor was there evidence of prior negligent conduct there. Moreover, there was no evidence of how frequently firearms were discharged at the dump before October 24, 1976. Frances testified she had been there two to four times before and had seen no shooting; Sterling testified he had been there "maybe 12, 15 times" before and had seen no shooting. But for the former city marshal's testimony about target shooting "maybe twice a year," there would have been no direct evidence of any shooting whatsoever. Even if we treat that witness' testimony about it being "common knowledge" that people had gone to the dump to shoot guns as competent evidence, the record remains bare of

8. For later developments see *Scheibel v. Hillis,* 570 S.W.2d 724 (Mo.App.1978).

any hint as to how often this occurred prior to October 24, 1976.

Additionally, appellants were obviously not innkeepers' guests, thus the "special relationship" that existed in *Virginia D.* was not present here. Indeed, appellants were not even invitees, in that they did not enter the dump in response to an express or implied invitation by the City on the business of the City or for their mutual advantage. *Seiler v. St. Louis Public Service Co.,* 295 S.W.2d 393, 396[5] (Mo.App.1956). Appellants were there strictly for their own motives or private convenience, in no way connected with the business of the City or any other relation with the City, and were thus, at best, licensees. *Abel v. Campbell 66 Express, Inc.,* 378 S.W.2d 269, 272[4] (Mo.App.1964).

█ In Missouri, a licensee (barring wantonness, or some form of intentional wrong or active negligence by the landowner) takes the premises as he finds them. *Wells v. Goforth,* 443 S.W.2d 155, 157 (Mo. banc 1969). A landowner is not subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition unless the landowner is himself aware of the condition. *Wells v. Goforth,* supra, 443 S.W.2d at 158.[9]

Here, the "condition" did not exist except when someone went to the dump and shot a gun. There is no evidence that the City knew Ginn, or anyone else, was at the dump shooting on October 24, 1976, nor is there evidence that the City knew Ginn, or anyone else, intended to go there that day for such purpose. Moreover, there is no evidence to support a finding that the City could have reasonably anticipated any shooting at the dump that day, or any other time. As noted earlier, the record is void of

evidence of any known acts of shooting other than the twice-a-year target practice by the former marshal and his fellow officer. Indeed, Sterling's own testimony illustrates the unexpected nature of the shooting. Sterling and Frances lived at Clearwater Lake near Ellington. Sterling testified he had no reason to believe anyone would be at the dump shooting on October 24, 1976, and he had never seen people discharging firearms at any dump anywhere.

We hold the evidence insufficient to support a finding that the shooting in issue here could have been reasonably foreseen by the City. Had there been evidence of previous unlawful conduct (as in *Virginia D.*), or potentially dangerous activity (such as the horseplay in *Hughes*), or that a particular person could foreseeably cause harm at the dump (such as the miscreant in *Scheibel* or the reckless boy in *Charlton*), or perhaps simply some known acts of shooting by persons other than the officers, our holding could be different. We need not speculate. Our ruling is confined to the record here.

The majority opinion in *Virginia D.* recognizes that even an innkeeper is not an insurer of his guests. To hold that the evidence here would support a finding that the City could have reasonably foreseen that someone would be shot at the dump would, as we see it, make the City an insurer, a result contrary to *Virginia D.*

█ The evidence is also deficient in other respects. One of the theories of negligence on which appellants' claims against the City were submitted was failure to warn of the discharge of firearms. Frances testified she saw Ginn with the pistol in his

---

9. Appellants appear to recognize they were only licensees because their verdict directing instructions against the City (footnote 5, supra) are based on MAI 22.07 [1978 Revision], the pattern instruction for licensees. *Wells v. Goforth,* supra, is cited in the Committee's Comment following that pattern instruction as authority for the rule that a landowner is liable to a gratuitous licensee only upon proof of the landowner's actual knowledge of the offending condition. There is language in *Scheibel v.*

*Hillis,* supra, 531 S.W.2d at 288[3] that the significance of the status as invitee, licensee or trespasser "largely disappears" once the landowner becomes aware of the visitor's presence, and a uniform duty of reasonable care is owed regardless of the status. That rule does not apply here because there is no evidence that the City became aware of appellants' presence at the dump the day they were injured. A case where the rule did apply is *Penberthy v. Penberthy,* 505 S.W.2d 122 (Mo.App.1973).

hands about five minutes before he shot. He was "pointing the gun here one time and over there another." When asked whether Ginn ever pointed the pistol in her direction, Frances replied, "Oh, it was all, kind of over towards where we was at. I never thought about him shooting, really I didn't, but he was pointing over toward us." Sterling also admitted seeing Ginn point the pistol in appellants' direction before the shooting. Sterling resumed looking in the trash, then a gun fired and he was hit.

■ Appellants were thus in a position similar to the plaintiff in *Gregorc v. Londoff Cocktail Lounge, Inc.,* 314 S.W.2d 704 (Mo.1958). There, the plaintiff was a patron at a cocktail lounge, and saw a man pointing a revolver at another man for some 15 to 20 minutes. The lounge manager and others attempted to persuade the gun-wielder to cease, but were unsuccessful. Police were summoned and an exchange of gunfire ensued, during which the plaintiff was hit by a shot from the troublemaker. The plaintiff alleged the lounge was negligent in failing to warn him, and in failing to eject the troublemaker. A jury verdict for the plaintiff was set aside by the trial court because the evidence did not support either theory. The Supreme Court agreed, pointing out that the operator of a place of public resort is not an insurer of the safety of his business invitees, but his duty is to exercise the care of an ordinarily careful and prudent person to prevent his invitees being injured by others. 314 S.W.2d at 707[3]. The proprietor is liable if, by the exercise of reasonable care, he could have known that others' acts were being done or were about to be done and could have protected his customers by controlling the conduct of the others or by giving an adequate warning so as to enable the customers to avoid the threatened harm. 314 S.W.2d at 707[5]. However, there is no duty to warn a business visitor of a danger or defect which is as obvious and well-known to the patron as to the operator. 314 S.W.2d at 707[7]. The Supreme Court rejected the

plaintiff's theory of failure to warn because the plaintiff had all the information that could have been conveyed to him by a warning, being as aware as anyone of whatever peril existed. Noting that the plaintiff could have left before the shooting started, the Supreme Court held that the plaintiff was not entitled to be warned of that which he already knew. 314 S.W.2d at 708. Though the danger in *Gregorc* may have been more apparent than the danger here, the principle should nonetheless apply.

■ The other theory of negligence on which appellants' claims against the City were submitted was failure to barricade the dump. In that regard, there is no evidence as to the size of the tract, the terrain, the type barricade necessary to prevent entry, or the effect a barricade would have had on the use of the dump for its intended purpose. Thus, the evidence again falls short of *Virginia D.* There, evidence was presented as to how the suggested preventive measures could have been implemented. The evidence here leaves that to speculation and conjecture.

For the foregoing reasons, we hold the evidence was insufficient to submit appellants' claims against the City to the jury on the theories in the verdict directing instructions submitting those claims. Appellants tendered no other verdict directing instructions against the City to the trial court, and it appears that a submission against the City on any other theory would have been beyond the scope of appellants' petition. No submissible case having been made against the City, any error in the contributory negligence instructions given at the City's request is harmless.[10] *Corcoran v. Southwestern Bell Telephone Co.,* 572 S.W.2d 212, 214[2] (Mo.App.1978).

That portion of the judgment denying appellants' claims against the City is affirmed. That portion of the judgment denying appellants' claims against Ginn is reversed. The cause is remanded for a new trial of appellants' claims against Ginn only.

---

**10.** Those instructions submitted that appellants were contributorily negligent in failing to keep a careful lookout and failing to give Ginn an adequate warning of their location.

Costs on appeal are taxed half against appellants and half against Ginn.

GREENE, C.J., and FLANIGAN and MAUS, JJ., concur.