Pearl RUSH, Plaintiff-Respondent,

v.

**TOWNSEND AND WALL COMPANY,**
Defendant-Appellant.

No. 47991.

Supreme Court of Missouri,

Division No. 1.

Jan. 9, 1961.

Rehearing Denied Feb. 13, 1961.

W. J. Sherwood and W. H. Utz, Jr., of Smith, Sherwood, Utz & Litvak, St. Joseph, for appellant.

Downs & Pierce, St. Joseph, for respondent.

HOUSER, Commissioner.

This is a suit for damages for personal injuries sustained by Pearl Rush when she fell on the stairs in the Sixth Street vestibule of the Townsend and Wall department store in St. Joseph. A trial jury returned a verdict for plaintiff for $12,500. On December 7, 1959 defendant filed a notice of appeal from the ensuing judgment.

Plaintiff fell as she started to descend these stairs :

Plaintiff's theory of recovery was that defendant failed to exercise ordinary care to keep the landing and stairway in a reasonably safe condition for the use of its customers and business invitees, including plaintiff; that it negligently maintained them in an unsafe condition in that the brass handrail, marble landing and tread of the stairway were slick, and the landing and stairway were dimly and inade-

quately lighted so 'that she could not see a child or children thereon and avoid being brushed against by them, so that, while starting to step from the landing to the first step of the stairway and as her left hand was holding the brass rail, she was brushed against by a child or children, causing her hand to slip on the slick brass rail which she could not hold onto, and her foot to slip on the slick landing and stairway, whereby she fell.

Plaintiff, a 65-year-old lady, had lived in St. Joseph all her life. A customer of appellant, she had been in the store many times and had been in and out of the Sixth Street entrance many times. After making a purchase at appellant's store during the Christmas shopping season, plaintiff fell on the steps in appellant's vestibule on December 21, 1957 between 4:00 and 4:30 p. m. Crowds of children were downtown to participate in the annual Mayor's Christmas Party. As she was leaving the store plaintiff opened one of the glass doors which lead from the store to the vestibule and walked from the door to the top of the steps "alright." Storm doors separate the vestibule from the public sidewalk. The platform and stairsteps in the vestibule are made of Tennessee marble. She had walked across that marble and down those steps many times and "had always gotten across them alright" by being "ordinarily careful." As she came out of the store the vestibule was "very dimly lit" in comparison with the lights in the store, which were "bright and gay." Immediately after she entered the vestibule it was so dim that she "didn't see anything"—"couldn't visualize the steps or anybody in the vestibule,"—"couldn't see the children,"—"didn't see the children,"—"couldn't discern anyone or anything." Her eyes contract and expand in a normal manner to accommodate light. It takes "but a minute" or "not quite a minute" for her eyes to adjust. Plaintiff's judgment as to the length of a minute was timed, by experiment in the courtroom, at five seconds. Although plaintiff's eyes were not "completely ad-

justed," nevertheless, after standing there "a minute" and letting her eyes "focus to the darkness of the vestibule," she saw the steps. She saw the brass handrail. She *saw* the steps and railing and *knew* that the steps and railing were there "because [she] had gone in and out of the store many times." She knew that the steps were marble, and she "saw the marble steps were slippery." She put her gloves and pocketbook in her right hand, and started down the steps. She took hold of the brass handrail with her left hand. As she took hold of the brass rail to step down she started to put her right foot forward to step. Something brushed against her left side, jostled her, and startled her. It was "at least two" small children who "apparently" crawled under the rail and came up under her left arm. She had not experienced any difficulty starting down the steps until the children jostled her, but when the children brushed against her she tried to catch herself. The "slick rail" was "slippery to [her] bare hand." The handrail was "so slippery that [her] hand slipped,"—it was "so slick,"—she "couldn't maintain [her] hold on it,"—she "couldn't hold onto it tight enough to save [herself]." Inconsistently, plaintiff also testified that when she fell, and after she had fallen, she still "had ahold of the rail," "trying to catch [herself]." When the children jostled her, her hand "slipped down the rail." At the same time her hand "slipped on the slick rail" her foot slipped on the marble step, which was slick. She lost her balance, her foot folded under her and she fell on her leg, breaking it. Mr. Bauer, the store manager, and Mr. Wall, came to her assistance after she fell. Plaintiff saw them, recognized them and testified that "if anyone stood in front of you, you could see them and see who they were." She knew that other people were moving in and out of the vestibule. She stated that if the rail hadn't been slippery she could have caught herself and kept from slipping. The marble steps were slick, but plaintiff did not know whether there was any slippery substance on the steps. As far as she knew there

was no foreign substance on the steps. There was no evidence that there was any slippery substance or foreign object on the steps. Plaintiff, who had seen marble used for steps and entrance ways in public buildings, "imagined" that it is used extensively and conceded that she had walked over marble floors in banks and public buildings "all over town."

Appellant's first point is that the court erred in refusing to sustain defendant's motion for a directed verdict at the close of all the evidence. Appellant argues that the vestibule was adequately illuminated for persons exercising ordinary care for their own safety; that the landing and steps, constructed of Tennessee marble, a material commonly used for such purposes in stores and public buildings, were not worn but were in good condition, well maintained, and of adequate and customary design, free of foreign substance; that the stairway was divided by a brass handrail of usual and ordinary construction, clean and free of any foreign substance; that there was no claim of structural defect in, or foreign substance on, the landing, stair or handrail, and no evidence that the children who jostled plaintiff were in any way subject to the supervision or control of the defendant, or that defendant had any reason to know or anticipate that they were on the premises or that they might come up under the handrail, brush against plaintiff and cause her to fall. Appellant further argues that because of plaintiff's familiarity with the landing, steps and handrail, generally and particularly on the occasion in question, the condition was open and obvious and as well known to plaintiff as it was to defendant. Accordingly, appellant contends that no negligence on defendant's part was shown; that the proximate cause of plaintiff's fall was the act of the children in brushing against and jostling plaintiff, for which defendant is not responsible; and that a storekeeper is not liable to an invitee for injuries resulting from an open and obvious condition of the premises as well known to the plaintiff as to the defendant.

Respondent disputes appellant's argument that the proximate cause of plaintiff's fall was the act of the children in brushing against her. Respondent contends that the proximate cause was inadequate and dim lighting on the stairway preventing plaintiff from seeing the children and avoiding them, as a result of which the children brushed against and jostled her, causing her to lose her balance. Respondent attempts to complete the chain of causation by coupling the inadequate lighting with the slick condition of the handrail and step, contending that plaintiff was unable to recover her equilibrium ("catch" herself) by the use of the slick handrail and that the fall was consummated by the slippage of plaintiff's foot on the slick step.

Plaintiff's inability to see the children because of inadequate and dim light, and her ability to have avoided the brush with and jostling by them if she could have seen them, were essential elements of plaintiff's claim for relief, and the burden of proving these facts was upon plaintiff. The keystone in the arch is the inability of plaintiff to see the children. The chief difficulty with plaintiff's case is that by her own testimony plaintiff refuted this basic fact. It is true that plaintiff testified that *immediately after she emerged* from the brightly lit store she could not see the children, the steps, anyone or anything in the vestibule. The question, however, is not what plaintiff could see immediately after she came out of the store. The crucial question is what plaintiff could see as she started to use the steps and was about to encounter the children. Plaintiff did not testify that as she started to use the steps she could not see the children, and it is an inescapable inference from other testimony of plaintiff that she could have seen the children *at that time,* if they had been in the range of her vision, or if she had been looking. Her other testimony indicates that her ability to see changed considerably between the time she emerged from the

store and the time she started to use the steps. There was an important time lapse. Plaintiff testified that immediately after she came out of the brightly lit store she could not "visualize the steps or anybody in the vestibule, but *I did see them after standing there a minute and letting my eyes focus to the darkness of the vestibule.*" (Emphasis ours.) Plaintiff later modified this statement by saying that her eyes were not "completely adjusted," but the plain and unmistakable import of her testimony on ability to see, taken as a whole, is that her eyes had adjusted to the difference between the intensity of light in the store and in the vestibule sufficiently that at the time she started to use the steps she could readily discern and identify objects and persons in the vestibule. After standing there "a minute" (shown by experiment to be approximately five seconds, but long enough according to plaintiff to give her eyes "a chance to adjust") plaintiff walked across the platform extending from the exit doors to the top step of the landing, a distance of from three to five feet, changed her gloves from her left to her right hand, and started to use the steps. In the meantime, according to plaintiff, she saw the steps. She saw that they were slippery. She also saw the handrail. She testified that "if anyone stood in front of you, you could see them and see who they were." After her fall plaintiff saw and recognized Messrs. Bauer and Wall, and she was cognizant of the fact that other people were moving in and out of the vestibule. While plaintiff did not actually see the children who brushed against and jostled her,[1] it is an inescapable inference from the foregoing testimony of plaintiff with respect to her ability to see, that it was not for the lack of adequate lighting that she did not see the person or persons who jostled her when she started to use the steps.

In determining whether plaintiff made a submissible case we have assumed as a fact that the light in the vestibule was "very dim," as plaintiff testified, notwithstanding such testimony is a mere conclusion. Testimony of this nature was ignored in Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303, loc. cit. 305, and regarded as insubstantial in Peck v. Yale Amusement Co., Mo.Sup., 195 S.W. 1033, loc. cit. 1034. However dim the light was, plaintiff is bound by her other testimony with reference to her ability to see, by which she clearly demonstrated that she could see, identify and perceive persons and things in the light available to her. In this determination we have also rejected all of the defendant's testimony with reference to lighting in the vestibule, namely, that there was a ceiling fixture above the steps consisting of four 48-inch fluorescent tubes, illuminated at the time; that there were display windows on each side of the vestibule, one of which was illuminated by one 150-watt and one 100-watt electric light, the other by a 300-watt light, and that the vestibule received light on the store side through two glass panel doors and from the street side through storm doors with glass panels.

Plaintiff not only affirmatively disproved her case on inadequate lighting, but also omitted to make proof of another vital element of her case. Plaintiff's theory of

---

1. When asked if she saw the children come under the rail, she answered, "I didn't say I saw them. I said apparently they came under the rail." She testified positively that she did not know where the children came from, but in all other respects her testimony with reference to the children was full of suppositions and conclusions. She "supposed" they were coming up the steps. She did not know "how many came up the steps" or "how many there were on the other side of the rail." "Probably at least two," but she could not tell how many, "apparently" came under or crawled under the rail. They "had to come under the rail" since they jostled her left side. "Evidently" they were small children. They "had to be" to come under the rail. She "imagined" that they were around six or seven years old.

the case was that if the vestibule had been adequately lighted the presence of the children would have been revealed, which would have enabled her to avoid contact with them and thus avoid the jostling which precipitated her fall. Although assumed as a fact in plaintiff's brief and argument, the record is barren of any evidence that if plaintiff had seen or could have seen her jostlers she would have had time thereafter to avoid contact with them.

◼ Therefore, having by her own testimony refuted her contention that inadequate and dim lighting prevented her from seeing the children, and having failed to prove that she would have had time thereafter to avoid contact with them, plaintiff has failed to sustain her burden of proving by substantial evidence that inadequate and dim lighting was the proximate cause of her fall.

Three cases are cited by plaintiff in support of her theory of recovery: Wattels v. Marre, Mo.Sup., 303 S.W.2d 9, Busby v. Southwestern Bell Telephone Co., Mo.Sup., 287 S.W. 434, and Lyons v. Lich, 145 Or. 606, 28 P.2d 872. Wattels and Busby hold that a submissible jury case is made upon a showing that plaintiff was injured as a result of a defective condition of a step not adequately lighted so as to enable plaintiff to see and discern a proved dangerous condition. In Lyons a combination of darkness, lack of a handrail and slippery marble were held to present a fact question for a jury on the question of proximate cause. In all three cases there was ample evidence that because of poor lighting conditions the injured party in the exercise of ordinary care would not have observed the step or noted its dangerous condition (was not enabled to see and discern the presence and condition of the step), which distinguishes them from this case, in which plaintiff's own testimony fails to support and actually refutes the basic predicate of liability, namely, that poor lighting conditions prevented plaintiff from seeing and appreciating the hazards.

◼ With inadequate lighting eliminated as the proximate cause, did plaintiff nevertheless make a submissible case on the basis of the negligent maintenance of a slick handrail, and a slick landing and stairstep? We think not. No submissible case was made on the basis of a slick handrail. A slick handrail may not be said to be dangerous or unsuitable for the purpose intended, merely because it is slick. The manifest purpose of a handrail located adjacent to a staircase is to give assistance to persons ascending or descending the steps. A handrail provided for such purpose is normally smooth and slick so that the hand may slide, slip or glide from point to point as one alternately grasps and releases the rail in ascending or descending step by step. A handrail with a smooth, slick surface is one best suited and adapted to the ordinary and accepted use to which handrails are put. It is not negligence to provide and maintain a slick handrail, merely because it is slick. A handrail on a staircase may be likened to a handhold on a locomotive engine. In Zachritz v. St. Louis-San Francisco Ry. Co., 336 Mo. 801, 81 S.W.2d 608, 611, an action under the Federal Safety Appliance and Boiler Inspection Acts, 45 U.S.C.A. §§ 1 et seq., 22 et seq., it was shown that in walking up and down the steps of a locomotive engine it was customary "to slide the hands up and down on the handhold." In holding that "it cannot be said that a slick handhold is defective" Westhues, J., pointed out that " * * * handholds, as a rule, are smooth and intended to be utilized by grabbing with the hands and holding, or grabbing and permitting the hand to slide and yet retain a firm hold, as is done when sliding down," and that "The fact that respondent's hand slipped on the handhold was no evidence that the handhold, as such, failed to fulfill its proper function." 81 S.W.2d loc. cit. 611.

◼ Nor did plaintiff make a submissible case on the basis of her testimony that the marble step was slick, and that she saw the marble steps were slippery. Plaintiff

did not complain about the construction of the steps, nor did she produce evidence that there were any worn spots, depressions, cracks, declevities, breaks or differences in elevation. There was no foreign substance or object on the step. The only fault plaintiff found with the step was that it was slick and slippery. There was no claim that the one spot where plaintiff stepped was more slick or slippery than the other portions of the step. As indicated, the dim lighting did not conceal the slickness or slipperiness of the step from plaintiff, for she testified that she saw the step and "saw the marble steps were slippery." By her own testimony plaintiff was as fully advised as to the slipperiness of the step, and therefore knew as much about the hazard of stepping on it as if the storekeeper had warned her of its condition. By her own admission plaintiff was familiar with the steps, knew they were made of marble, and had used them safely many times, when exercising ordinary care. A storekeeper is not liable to a business invitee for injuries resulting from an open and obvious condition of the premises as well known to the invitee as to the storekeeper. Heine v. John R. Thompson Co., Mo.Sup., 330 S.W. 2d 867, loc. cit. 870; Stoll v. First Nat. Bank of Independence, 345 Mo. 582, 134 S.W.2d 97; Wilkins v. Allied Stores of Missouri, Mo.Sup., 308 S.W.2d 623, loc. cit. 628. A storekeeper's duty to business invitees is to use ordinary care to maintain stairsteps in vestibules in a reasonably safe condition for their use. Plaintiff's evidence does not show that defendant failed to perform that duty. Stoll v. First Nat. Bank of Independence, 234 Mo.App. 364, 132 S.W.2d 676. And see Mullen v. Sensenbrenner Mercantile Co., Mo.Sup., 260 S.W. 982. The mere maintenance of a marble stairway is not an act of negligence upon which to base a liability for damages to one falling upon it with knowledge of its construction. Stein v. Buckingham Realty Co., Mo.App., 60 S.W.2d 712, loc. cit. 714, quoted with approval in Boyd v. Logan Jones Dry Goods Co., 340 Mo. 1100, 104 S.W.2d 348, loc. cit. 351.

Plaintiff claims that the "open and obvious" rule does not apply to this case because she could not see the children, due to dim lighting, and therefore the children brushing against her was a condition not open and obvious to her. The rule applies to the physical condition of the step and handrail. No attempt has been made to apply the rule to the action of the children. Plaintiff cites Gilbert v. Bluhm, Mo.Sup., 291 S.W.2d 125. The Gilbert case is distinguishable on the facts. The light in Gilbert was shown to be so inadequate and dim that an unsafe condition (waxed and sloping steps) could not be seen by plaintiff. Furthermore, plaintiff in Gilbert did not concede that her eyes had become focused to the dark hallway, and that she could see the place where she fell, and see surrounding objects and perceive the slippery character of the surface, as did plaintiff in the instant case.

With reference to the brushing or jostling by the children, the occupant of a business property is not liable for the misconduct or negligent acts of third persons who are not acting under his direction or control or which he could not reasonably have anticipated and guarded against, 38 Am.Jur., Negligence, § 103; 65 C.J.S. Negligence, § 45, p. 534; Smith v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 160 S.W. 2d 476, loc. cit. 478, 479 (a rule conceded by plaintiff on page 4 of her brief), nor is a storekeeper liable for an injury to a customer caused by the pushing or violent conduct of a crowd, in the absence of facts indicating that an injury might reasonably have been foreseen. Tuttle v. Kline's, Inc., 230 Mo.App. 230, 89 S.W.2d 676; 65 C.J.S. Negligence § 45, p. 534. Plaintiff contends that defendant could have anticipated heavy traffic on the stairway during the Christmas rush "so as to require adequate lighting to enable its customers to avoid being pushed or jostled or caused to fall on the slick stairway and handrail." Plaintiff's argument relates the jostling solely to the question of adequate lighting and as we have pointed out plaintiff's own evidence discloses that

she could see when she started to use the steps.

Since plaintiff did not make a submissible case on the theory of liability she adopted and since defendant is not liable for the only remaining possible causes of her fall (the action of the third persons, or her own carelessness), the circuit court should have directed a verdict for defendant. In this situation the alleged procedural errors become academic. The judgment is reversed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.