Leroy FOWLER, (Plaintiff) Appellant,

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a corporation, (Defendant) Respondent.**

No. 31026.

St. Louis Court of Appeals.

Missouri.

Nov. 19, 1963.

Librach, Heller, Byrne & Weber, William P. Byrne, St. Louis, for appellant.

Robert C. Ely, St. Louis, for respondent.

L. F. COTTEY, Special Commissioner.

This case has been retransferred to us by the Supreme Court for final disposition. Fowler v. Terminal Railroad Association, Mo., 363 S.W.2d 672.

In the court below plaintiff had a verdict for $1,500 for damages for injuries sustained by him in a fall on defendant's premises. In due course his motion for a new trial or, in the alternative, for an additur, was overruled. By the same order, but without assignment of any specific ground therefor, the trial court set aside the verdict and entered judgment for defendant on its motion for judgment in accordance with its motion for a directed verdict. From that order plaintiff has appealed.

It is conceded that defendant was the owner of, and responsible for the proper maintenance of, the premises known as Union Station in St. Louis on which the accident occurred, and we adopt plaintiff's theory that he was a business invitee at the time he entered those premises. The accident occurred just as he was in the act of entering and it was caused, he alleges, by defendant's negligence in maintaining the entrance in a dangerous condition in four particulars, submitted conjunctively in his main instruction: (1) because there was a step inside the door "in such close proximity to the doorway that persons entering would be required to hold the door while entering and might be off balance"; (2) because the entranceway "was not adequately lighted"; (3) because "there was no handrail on said steps immediately inside said entrance door"; and (4) because "said steps were not clearly marked or provided with non-slip edges." Our statement of additional facts is gleaned entirely from plaintiff's evidence, defendant's evidence having been limited to certain admissions against interest contained in plaintiff's deposition.

Plaintiff was a seventy-six year old former employee of defendant who, prior to his retirement in 1954, had worked for defendant on the premises here involved for a period that "lacked three months of being fifteen years." Following his retirement he became engaged in a new venture that required his presence on defendant's premises from time to time for business purposes. It was in connection with that venture that he entered on the occasion in question. The record discloses that on the Eighteenth Street side of Union Station there is a cluster of three entrances of similar if not identical construction. Each consists of a pair of hinged door panels with glass panes in the upper portions, flanked by glass windows. The doors, all of which open outwardly on to the street, provide ingress to a foyer "about eight feet wide" that extends the entire length of all three entranceways. The building seems to have been constructed on a grade that slopes downward to the south, with the result that inside the north entrance, at a distance of "twenty inches to two feet," a flight of three concrete steps is required to reach from the interior projection of the sidewalk level (sometimes referred to in evidence as a "ledge" and as the "top step") down to the floor of the foyer, whereas only two steps are required at the center entrance and only one at the south. There is no handrail at these steps; they are not painted or other-

wise marked nor are they equipped with non-slip edges. Across the foyer, opposite the three outside entrances, three corresponding pairs of swinging doors lead through a glass-and-wood partition to a main stairway of some twenty-odd steps that descends to the basement of the building. Those stairs are equipped with several conveniently located sets of handrails.

Plaintiff testified that he was in the act of entering the building by the northernmost of the Eighteenth Street entrances when his accident occurred. This was the entrance he had "ordinarily used," though "not always," throughout the nearly fifteen years he had worked for defendant there. He estimated that during that time he had used it on an average of "once a day" for "five days a week," or a mathematically calculable total of some 3,800 times, to say nothing of the visits he had made to the premises since his retirement. On the day of his accident he followed "the same procedure" in effecting his entrance that he had customarily followed "for almost fifteen years." On no previous occasion had he "ever had any difficulty." He stated that as he entered the building that day he "glanced down"—"I always look down to see where I'm going"—"seen the step," and did not observe "any foreign object, any paper or anything of that sort" on it. It was a clear day and there was no "ice, snow or rain or anything of that sort" on it. There is no claim that the surface of the entranceway or steps were worn or cupped or defective in any similar respect. Each outside door was equipped with a "door closer," and when opened would not "stay open." It was consequently necessary, plaintiff said, to "hold your hand on it" when entering or "it would hit you." In that particular, however, as in all its other features, the entranceway was in substantially the same condition on the day of the accident as it had always been, so far as plaintiff could observe. An engineer who had inspected the premises at plaintiff's request testified that as one entered the building from the outside there would be "quite

an appreciable difference" in the "lighting conditions," and that "it would be emphasized" notwithstanding the artificial illumination in the general area; and plaintiff added, out of his long familiarity with the place, that "it was always dark in there." Nevertheless, his photographs of the steps show them to be quite plainly visible even with the doors closed. He was holding the door open at the time his accident occurred. On direct examination he gave this account of the mishap.

"Q. Tell us what you did.

"A. I pulled the door back, held it with my hand and put my left foot in. There was a ledge there about this wide (indicating). I put my right foot in there and when I put my right foot down I lost my balance and it threw me to my left.

"Q. Did you slip?

"A. Yes, I slipped."

He identified a photograph of the interior projection of the sidewalk level, mentioned above, as being the "ledge" he referred to. On cross-examination he repeated that version of the incident:

"Q. Is it correct, Mr. Fowler, that you slipped on the top step?

"A. Yes, I put my left foot in and my right foot to go in the door, holding the door. That is when I lost my balance, my foot slipped.

"Q. You slipped, is that right?

"A. Yes, sir.

"Q. Is it correct you lost your balance because you slipped?

"A. Yes, sir.

\* \* \* \*

"Q. Your right foot slipped off that top step?

"A. Yes, sir."

"Q. And that is what caused you to lose your balance?

"A. Yes, sir."

On a dozen occasions he repeated his statement that he "slipped" while in the act of taking his first step inside the door; but he was unable to assign any cause for his slipping. That fact was confirmed on cross-examination in this way:

"Q. Isn't it correct that you did not know what caused you to slip?

"A. Yes, sir.

"Q. When you say yes, sir, you mean you did not know, is that right?

"A. Yes, sir.

\* \* \* \*

"Q. Is that right, sir?

"A. I am not able to tell."

That plaintiff slipped, and that he had no knowledge as to what caused him to do so, was thus established in considerable detail. By contrast, his account of the further development and ultimate issue of his misadventure is signally cryptic. It was confined to this question and answer:

"Q. Where did you finally come to rest after you stumbled and fell?

"A. Thirteen steps down."

He identified the place on a photograph of the main stairway to the basement. How he managed to get from the outside entrance down the three steps to the foyer floor, across the eight-foot-wide foyer, though the swinging doors at the head of the main stairway, and half way down that stairway, without ever regaining his balance or checking his forward progress, is a subject for speculation, idle but beguiling.

The learned trial court evidently concluded, on the record made, that plaintiff had failed to make a submissible case on any of the four grounds hypothesized in his main instruction. We think that ruling was proper.

The rule is that "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers." 65 C.J.S. Negligence § 50, p. 541 et seq. In Ostresh v. Illinois Terminal Railroad Company, Mo., 313 S.W. 2d 19, 22, the Supreme Court said:

"Defendant owes business invitees the duty of ordinary care to keep its premises in a reasonably safe condition. It is not required to exercise the highest degree of care or to make its premises absolutely safe. It is not an insurer of an invitee's safety. Williams v. Kansas City Term. Ry. Co., 288 Mo. 11, 231 S.W. 954, 956[2]. The basis of the defendant-proprietor's liability is defendant's superior knowledge of an unreasonable risk of harm of which the invitee does not or in the exercise of ordinary care should not know. Such a defendant is not liable for injuries due to dangers which are obvious, or as well known to plaintiff as to defendant.' Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468, 473[1–3]; Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303, 305."

To the same effect see Haire v. Stagner, Mo.App., 356 S.W.2d 305, where numerous authorities are collected and reviewed.

How is it possible, within the limits of that rule, to ascribe any negligence whatever to defendant in this case? The evidence discloses nothing dangerous or unusual in the construction or maintenance either of the entranceway or of the steps inside. Exterior doors of business establishments frequently open outwardly and,

in the case of buildings "where people are wont to assemble" are required by statute to do so. Sec. 320.070, V.A.M.S. They are commonly equipped with a door closer, and there is no claim in this case that such device was not functioning properly; as, for instance, that it closed the door with abnormal speed or unreasonable force. Defendant "has the right to rely upon the sufficiency of a structure or contrivance such as is in common use, and which, in the light of the experience obtained by its general use, has been found to answer the purpose for which it was designed and intended." Stein v. Buckingham Realty Co., Mo.App., 60 S.W.2d 712, 713. If in this case plaintiff found it necessary to retard the closing of the door by holding his hand on it as he entered, or if his own convenience was served thereby, it was in either event a condition with which his use of it on more than 3,800 previous occasions, following "the same procedure," had surely familiarized him. And even if he had been a stranger to the premises it would hardly be permissible to infer that the action of the door, whatever it may have been, was a contributing factor in his accident. He effectively negatived any such inference by testifying that he lost his balance because he "slipped" and he had no knowledge as to what caused him to slip.

■■ The steps were apparently free of any foreign substance which might account for the accident. The surfaces were smooth but not slick. They appear to have been of ordinary construction. "Steps are usual in dwellings and store buildings," Main v. Lehman, 294 Mo. 579, 243 S.W. 91, 93, and "steps and stairways of ordinary construction are reasonably safe when used as means of overcoming differences in level," Oakley v. Richards, 275 Mo. 266, 204 S.W. 505, 506. True, they were "in close proximity to the doorway," but that circumstance does not account for plaintiff's slipping on them; certainly they were in no sense "hidden dangers, traps, snares, pitfalls, or the like." If plaintiff had not known of their location, and in some manner had been prevented from seeing them, he might have complained that defendant failed to warn him of their presence; but he was thoroughly familiar with them, and no question of failure to warn is involved in this case. The criticisms of plaintiff and his engineer-witness as to the lighting conditions in the foyer amount to the same vague generalities that were held insufficient to establish the negligence of the defendant-proprietor in Lindquist v. S. S. Kresge Co., supra, 136 S.W.2d loc. cit. 305, and in Ostresh v. Illinois Terminal Railroad Company, supra, 313 S.W.2d loc. cit. 23. And they are belied by plaintiff's photographs which show the steps to be perfectly visible with the outside door closed, whenas it was open, presumably admitting some degree of sunlight on "a clear day," when plaintiff slipped. But more to the point, no doubt, is plaintiff's admission that he "seen" the steps. That took the issue of inadequate lighting out of the case and rendered equally academic the question as to whether some marking of them might have made them even more readily visible.

■■ Perhaps the addition of a handrail along the three steps, or the equipping them with non-slip edges, would have made them still safer; but "Defendant was not an insurer or required to furnish absolutely safe steps." Ostresh v. Illinois Terminal Railroad Company, supra, 313 S.W.2d loc. cit. 24. In any event the absence of those safeguards was obvious and well known to plaintiff. "And, hence, there is no liability for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant." Cameron v. Small, Mo., 182 S.W.2d 565, 568. Whenever "the invitee is aware of the condition, or it is such that he must be conscious of it and of the consequence of disregarding it, he cannot recover." Harper v. First National Bank of Kansas City, Mo., 196 S.W.2d 265, 267. "Plaintiff also must have known that defendants owed her [him] no duty to protect her [him] from an unsafe condition which was obvious to a person

exercising ordinary care." Cameron v. Small, supra, 182 S.W.2d loc. cit. 569 And even if we were to assume, as plaintiff would have us do, that the premises were not absolutely safe and that by making the alterations implicit in the language of his main instruction they could be made so, we would be constrained to say that a reasonable necessity for such alterations can only be discerned in the light of hindsight, as plaintiff's own accident-free use of the entranceway over an extended period of years demonstrates; hence, that defendant's failure to have constructed the premises according to plaintiff's current specifications does not constitute a breach of its duty to invitees. The law does not require the proprietor "to exercise the highest degree of care or to make its premises absolutely safe," and "the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers." Ostresh v. Illinois Terminal Railroad Company, supra, 313 S.W.2d loc. cit. 22.

On the basis of the record in this case it seems appropriate to say, as did the court in Main v. Lehman, 294 Mo. 579, 243 S.W. 91, 95, "No case is cited from this or any other jurisdiction and we have been unable to find any, where the invitee had full knowledge and information immediately before his or her injury of the step or other obstruction complained of, in which defendant was held guilty of negligence or liable for the plaintiff's injury." There is nothing left in the case, from a liability standpoint, save the fact of plaintiff's unexplained slipping. But slipping is a result rather than a cause. It may be produced by negligence, one's own or another's, and it may occur in the absence of any negligence at all. It is a common mischance invited by the ordinary act of walking, a normal hazard incident to the descent of steps, and, in the absence of any showing as to its cause, we may no more infer defendant's primary negligence from it than plaintiff's contributory negligence. Heine v. John R. Thompson Co., Mo., 330 S.W.

2d 867, 868. Neither party may be found at fault from the mere fact that an accident happened. Our impression of the evidence, then, is summed up by the closing comment of the court in the Ostresh case, 313 S.W.2d loc. cit. 24: "Plaintiff's testimony as to the cause of his fall, the only testimony on the issue, is vague and at best does not present a situation from which liability of the defendant might be drawn with a greater degree of reasonable probability than defendant's nonliability." Clearly there was no case made for the jury.

Plaintiff insists, however, that we may not affirm the trial court's order on that ground; that it is not susceptible of affirmance at all, because the trial court neglected to specify any ground for it. That omission renders the order "null and void," plaintiff says, citing Supreme Court Rules 75.01, 78.01 and 83.06(b) and (c), V.A.M.R. The portion of the order with which we are here concerned reads as follows: "Motion of Defendant for Judgment in Accordance with its Motion for a Directed Verdict sustained and verdict and judgment entered herein in favor of Plaintiff set aside and judgment entered in favor of defendant * * *." Rule 75.01 says that "* * * every order granting a new trial shall specify the grounds therefor * * *." Rule 78.01 requires that "* * * Every order allowing a new trial shall specify of record the ground or grounds on which said new trial is granted." And Rule 83.06 provides that "When a trial court grants a new trial without specifying of record the ground or grounds on which the new trial is granted, the presumption shall be that the trial court erroneously granted the motion for new trial and the burden of supporting such action is placed on the respondent; * * *" and, further, "If the trial court grants a new trial without specifying discretionary grounds, it shall never be presumed that the new trial was granted on any discretionary grounds."

Those Rules, as defendant points out, deal with the granting of new trials, whereas our

concern is with an order sustaining defendant's motion for judgment in accordance with its motion for a directed verdict, without any new trial. Such an order comes within the special purview of Rule 72.02 which does not, in terms at least, require that the grounds on which it is based be specified in it. Defendant suggests that, considering the care with which the Rules were drafted and the precautionary repetition of the requirement in those relating to the granting of new trials, the omission of any similar requirement in Rule 72.02 was not inadvertent but in line with a policy of relieving the trial court of the tedious formality of restating in its order one or more of the grounds already set forth with particularity in the motion. Not so, says plaintiff, citing Willis v. Willis, Mo.App., 274 S.W.2d 621, loc. cit. 625–626, where the Springfield Court of Appeals, in ruling a somewhat similar question, used this language of apparently contrary import: "It logically follows that the considerations which motivated legislative imposition of the quoted requirements and judicial declaration of the stated presumptions with respect to the granting of a new trial would, a fortiori, compel recognition and application of the same requirements and presumptions with respect to action of a trial court in not only setting aside a judgment theretofore validly entered but also, upon the same evidence and without retrial, rendering a new judgment for the opposite party."

It is unnecessary for us to resolve any conflict between those views. The trial court's order, whatever its technical imperfections may be, is not null and void. The most that can be said of it is that the omission to specify the ground upon which it was based raises a presumption, albeit a rebuttable presumption, that it was erroneous, with the result that "the burden of supporting such action is placed on respondent." We think defendant-respondent has borne that burden, if only by bringing convincingly to our attention the fact that plaintiff wholly failed to make a submissible case. It would be a curious thing if we were obliged to reinstate a groundless and improper verdict simply because the trial court neglected to spell out its shortcomings in the order setting it aside. We think no construction of the Rules consistent with their avowed purpose of promoting the administration of justice would lead to that result.

The order sustaining defendant's motion for judgment in accordance with its motion for a directed verdict should be affirmed.

The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion of COTTEY, Special Commissioner, is adopted as the opinion of this court.

The order sustaining defendant's motion for judgment in accordance with its motion for a directed verdict is accordingly affirmed.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.