Dorothy Lane FENNELL and Robert William Fennell, (Plaintiffs) Respondents,

v.

ILLINOIS CENTRAL RAILROAD COMPANY, a Corporation, (Defendant) Appellant.

No. 31577.

St. Louis Court of Appeals.

Missouri.

Oct. 20, 1964.

Motion for Rehearing or for Transfer to Supreme Court Denied Nov. 17, 1964.

Gentry, Bryant & Sheppard, Arnot L. Sheppard, St. Louis, for appellant.

Bernard A. Barken, Harold L. Satz, St. Louis, for respondents.

R. KENNETH ELLIOTT, Special Judge.

Plaintiffs, husband and wife, instituted this action for the injuries sustained by the wife, and plaintiff husband for the medical expenses and the loss of the services and society of his wife. Hereinafter we shall refer to plaintiff Dorothy Fennell as plaintiff.

On February 24, 1961, plaintiff, with her daughter and grandson, boarded one of defendant's passenger trains at St. Louis, Missouri, to travel to Columbus, Georgia. At Carbondale, Illinois, it was necessary for plaintiff to change trains. It was admitted by defendant that it owned the railroad station and facilities involved herein at Carbondale, Illinois. Defendant's three tracks ran on the east side of the passenger station in a north and south direction.

The train arrived in Carbondale at about nine o'clock p. m., at a time when it was dark and snowing very hard, and blowing very hard. When the train stopped, plaintiff proceeded toward the vestibule of the railroad car, carrying an overnight bag in her left hand, and with her right hand she held the hand of her three-year-old grandson who was following her. Plaintiff's daughter brought up the rear, holding the boy's other hand. As plaintiff started down the three train steps to the station platform to the west, plaintiff testified that it was her intention to step onto the station platform, which appeared to be directly beneath her. As she made the step from the bottom step with her left foot, instead of stepping on the station platform as she intended, her left foot went all of the way to the ground, between the bottom step and the station platform, and her right foot remained on the bottom step until after she had drawn her left foot up. This maneuver was accomplished, according to plaintiff's testimony, by throwing herself back against the train entrance and grasping a handhold on the north side of the train entrance with her right hand.

Defendant's employee, a train porter, then assisted plaintiff to the platform, using a step box. Plaintiff, her daughter, and her grandson proceeded to the station house, thence to a drug store, purchased some ointment, and then went to a restaurant and ate. After finishing their food, plaintiff went back to the station house and to the ladies' room and rubbed some of the ointment on her leg.

Plaintiff boarded the southbound train to Columbus, Georgia, and after arriving in Columbus she consulted a doctor after becoming sick during the train trip from Carbondale to Columbus, experiencing severe pain in her back and leg. She returned the next day to St. Louis by automobile driven by her daughter, a trip of about 900 miles. On the day of returning from Columbus, Georgia, plaintiff consulted her family doctor and began taking treatment, including a hospitalization period of three weeks.

The station platform at Carbondale was 10½ inches above the ground, and approximately 3¾ to 5¾ inches horizontally west of the bottom step of the railroad car. The distance of the bottom step above the platform was about 19 inches. Plaintiff estimated the distance from the bottom step to the platform as being approximately two feet. From the top of a step box up to the bottom step of the train it was about 8½ inches.

The station house at Carbondale was 24 feet from the halted train. On the east side of the station house and under the eaves of the roof, there were ten 200-watt bulbs, separated 26.7 feet from each other. About 400 feet north of the station house door there were some floodlights, and other floodlights approximately 1,000 feet south, although defendant's evidence was that these lights would not light up the area where the people were getting off the train, because the floodlights in question were to the east of the stopped train.

The sole ground of negligence submitted by plaintiff was defendant's failure to pro-vide sufficient light to adequately illuminate the platform and surrounding area. After verdict and judgment for plaintiff Dorothy Fennell in the sum of $6,400, and for plaintiff Robert Fennell, her husband, in the sum of $2,100, defendant appealed.

Defendant claims that the trial court erred in denying defendant's motions for a directed verdict for the reason that plaintiff's evidence did not establish that defendant failed to "provide sufficient light to adequately illuminate" the station platform "and the surrounding area" because such evidence consisted of conclusions and was contrary to physical facts.

▪ In determining whether plaintiff's evidence made a submissible case against defendant, we view the evidence in the light most favorable to plaintiff, give it the benefit of all favorable, reasonable inferences, and disregard defendant's evidence unless it aids plaintiff's case. Southwestern Bell Telephone Company v. Chester A. Dean Construction Co., Mo., 370 S.W. 2d 270; O'Leary v. Illinois Terminal Railroad Company, Mo., 299 S.W.2d 873.

▪ Defendant maintains that the only testimony regarding the sufficiency of light came from plaintiff and her daughter, and that their testimony constituted no more than conclusions as to the sufficiency of the light, citing Fowler v. Terminal Railroad Association of St. Louis, Mo.App., 372 S.W.2d 497; Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303; Peck v. Yale Amusement Company, Mo., 195 S.W. 1033; and Rush v. Townsend and Wall Company, Mo., 343 S.W.2d 44.

There is no question that the defendant's train arrived in Carbondale at a time when it was dark. Both plaintiff and her daughter testified that at the point where they alighted from the train the light was very dim and that the only light they saw came from inside the train station, through the windows 24 feet away. According to defendant's witness Humphries, the bulb over the ticket office, which was replaced

after the 9:15 train got to Carbondale, and the floodlights in the yard east of the track on which the train in question stopped, would not light up the area but would cast a shadow at the point where plaintiff alighted. This evidence, coming from defendant's witness, would tend to corroborate the testimony of plaintiff and her daughter to the effect that the area was dimly lighted. In addition, plaintiff's evidence showed that it was snowing hard; and this, of course, would affect the light coming from whatever lights were burning.

In distinguishing the cases cited by defendant, we note that in the case of Fowler v. Terminal Railroad Association of St. Louis, supra, the plaintiff therein submitted photographs showing the steps to be visible, and plaintiff admitted that he "seen" the steps. As this Court therein stated, this "took the issue of inadequate lighting out of the case." In examining Lindquist v. S. S. Kresge Company, supra, cited by defendant, the evidence showed that plaintiff noticed the three lights over the landing where she fell, and that she had no "difficulty in getting around for lack of light." Defendant also cites Peck v. Yale Amusement Company, supra, which involved a fall in a theater balcony. In this case, the criticism of the plaintiff's testimony, characterized by the Court as being conclusions, stemmed not only from the need for a low light level in a theater, but from plaintiff's broken language being practically unintelligible.

Defendant urges that the recent Supreme Court case of Rush v. Townsend and Wall Company, Mo., 343 S.W.2d 44, controls this case. We distinguish it because in the plaintiff's own testimony in the Rush case she admitted she could see the children involved on the steps, and therefore her claim that the steps were inadequately lighted could not stand. As the Court therein stated:

"Plaintiff's inability to see the children because of inadequate and dim light, and her ability to have avoided the brush with and jostling by them if she could have seen them, were essential elements of plaintiff's claim for relief, and the burden of proving these facts was upon plaintiff. The keystone in the arch is the inability of plaintiff to see the children. The chief difficulty with plaintiff's case is that by her own testimony plaintiff refuted this basic fact."

Plaintiff contends that on this question of sufficiency of evidence, this case comes within the purview of Dixon v. General Grocery Company, Mo., 293 S.W.2d 415, wherein the plaintiff, a window washer, fell when a window sill was made dark by being covered by a canopy blocking the light. The Court stated, at page 420:

"The instant case differs from defendant's case of Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303, 305(4), where testimony that it was 'dark' and 'dim,' was considered conclusions and of no probative value. In the instant case there was testimony that the canopy blocked the light off of the window sill and was the cause of the sill being dark and difficult to see. The probative value of the testimony was for the jury."

Also, in Capstick v. T. M. Sayman Products Co., 327 Mo. 1, 34 S.W.2d 480, the Court accepted the testimony of a condition of being dimly lit where there was further evidence that the light was in the rear of a person descending the steps. In Gillespie v. Terminal Railroad Association of St. Louis, Mo.App., 204 S.W.2d 598, the Court said, at page 604:

"The plaintiff's statements that the vestibule was dark or dim and that she looked and did not or could not see the step, were factual and proper, and not conclusions within the rule of exclusion. Busby v. Southwestern Bell Telephone Co., Mo.Sup., 287 S.W. 434, 438."

In cases cited by defendant, we note that the common thread is a bare assertion by

plaintiff describing the conditions as being dark or dim, either later refuted by plaintiff's own testimony or lacking any further facts concerning such assertions.

In this case the jury could have believed from plaintiff's evidence that the ten undereave lights were not on, because plaintiff indicated on a photograph marked as Plaintiff's Exhibit 1, the station window, the position from which she claimed the light was coming, and she further testified on direct examination:

"Q. As you stood there did you observe whether or not there was a light in that area?

"A. Only coming from the station window."

Plaintiff's daughter testified as follows:

"Q. Did you observe or see where any lights were on around the area?

"A. Well, the only lights that I recall were coming from the station. That is the only one I remember.

"Q. When you say coming from the station, you mean inside the station?

"A. Yes, sir, through the windows."

None of defendant's witnesses testified directly as to whether the lights were turned on or off there on the night in question.

In addition, defendant contends that in connection with the plaintiff's testimony concerning the events at the time she stepped from the train, and at the same time released her grandson's hand, such would have been impossible inasmuch as defendant maintains that the normal reaction time of an individual, as recognized by Yeaman v. Storms, 358 Mo. 774, 217 S.W. 2d 495, 498, rules out the testimony because it is impossible of belief. We do not find that it was necessary for plaintiff to consume three-fourths of a second in deciding to let go of her grandson's hand; on the other hand, this action would not involve a time to see a situation and take corrective

action, as her release of the hand could be found to be an involuntary act as she was stepping or falling down. Plaintiff testified:

"Q. When did you let go of his hand?

"A. When I started to fall.

"Q. That's when you turned loose of his hand, right?

"A. Yes, sir."

We find that this testimony is worthy of belief. We rule this point against defendant.

Defendant's next assignment of error is that plaintiff's own evidence proves her guilty of contributory negligence as a matter of law. It is well established that since this accident occurred in the State of Illinois, the burden of proof was upon the plaintiff to prove by the greater weight of the credible evidence that plaintiff was in the exercise of ordinary care for her own safety, as set forth in Gerhard v. Terminal Railroad Association of St. Louis, 299 S.W. 2d 866, wherein the Supreme Court, en banc, stated:

"* * * plaintiff was required, as an essential element of his case, to prove that decedent was in the exercise of due care for his own safety on the occasion in question. This is a question for the jury 'when there is any evidence given on the trial which, with any legitimate inference that may be legally and justifiably drawn therefrom, tends to show the use of due care; but where the evidence, with all legitimate inferences that may be legally and justifiably drawn therefrom, does not tend to show due care on the part of plaintiff, the trial court is justified in instructing the jury to return a verdict for defendant.' Greenwald v. Baltimore & O. R. Co., 332 Ill. 627, 164 N.E. 142, 144."

Defendant contends that plaintiff's action in carrying an overnight bag in her left

hand and holding her grandson's hand with her right hand constituted a failure to exercise ordinary care as a matter of law. In the cases cited by defendant, we find that Chicago and Alton Railway Co. v. Noble, 132 Ill.App. 400, was a case wherein plaintiff admitted she saw a separation two and one-half feet wide, refused help from the nearby conductor, and was injured; in Ellis v. Southern Pacific, 50 N.M. 76, 169 P.2d 553, on a bright day, plaintiff admitted she knew the distance and deliberately stepped forward; and in Trudnowski v. New York Central Ry. Co., 220 A.D. 503, 221 N.Y.S. 686, the accident occurred at 4:00 p. m. in daylight and the plaintiff left by a rear entrance where there were no attendants, and the plaintiff there predicated negligence upon failure to provide a step box to assist her, and to notify her as to the height of the bottom step above the platform. In Young v. Missouri Pacific Railway Co., 93 Mo.App. 267, we find that the court stated: "The platform seems to be well lighted enough." And in Deskins v. Chicago, Rock Island & Pacific Railway Co., 151 Mo.App. 432, 132 S.W. 45, in daylight the plaintiff jumped at a platform three feet away.

We find these cases are not in point, but instead find that this case comes under Ardison v. Illinois Central Railway Co., 155 Ill.App. 274, affirmed by the Supreme Court of Illinois on the question of plaintiff's contributory negligence as a matter of law, 249 Ill. 300, 94 N.E. 501. In Ardison v. Illinois Central Railway Co., supra, the plaintiff was alighting from a passenger train and was thrown or fell under the wheels, losing a leg. Plaintiff's theory was that defendant failed to properly light the station platform, and the defendant in that case, as in this case, complained that plaintiff was guilty of contributory negligence as a matter of law because the plaintiff was carrying a basket and can. Both courts there held that the plaintiff's negligence was a matter properly submitted to the jury. See also Chadbourne v. Illinois Central Railway Co., 104 Ill.App. 333; Chicago & E. I. Railway Co. v. Taylor,

102 Ill.App. 445; Illinois Central Ry. Co. v. Keegan, 112 Ill.App. 28, affirmed 210 Ill. 150, 71 N.E. 321; Shanklin v. St. Louis Public Service Co., Mo.App., 370 S.W.2d 649; Stakebrake v. Union Pacific Ry. Co., Mo.App., 185 S.W. 1166; Chartrand v. Southern Railway Co., 57 Mo.App. 425; Roussell v. St. Louis-San Francisco Railway Co., Mo.App., 257 S.W. 516.

Our own Supreme Court, in the case of Dean v. Safeway Stores, Inc., 300 S.W.2d 431, has examined this question. There, plaintiff, on leaving a grocery store, walked in the parking lot in the dark as the parking lot lights had not yet been turned on. Plaintiff tripped over a banana crate wire handle, and the court there held, on the issue of plaintiff's contributory negligence, that such action was not contributory negligence as a matter of law, since the fact that the parking lot was dark neither precluded the plaintiff from using same nor caused plaintiff to be held to have "appreciated" the danger. Petera v. Railway Exchange Building, Mo.App., 42 S.W.2d 947.

In all of those cases the court found that the issue of plaintiff's negligence was properly left with the jury. We find it so in the instant case.

Defendant complains of Instruction No. 5 offered by the plaintiff. We have reviewed said instruction and find that it properly submitted the question of defendant's negligence and plaintiff's freedom from contributory negligence. Instruction No. 5 required that the jury find that plaintiff "was at all times mentioned * * * in the exercise of ordinary care for her own safety." Moore v. Ready-Mixed Concrete Co., Mo., 329 S.W.2d 14; O'Leary v. Illinois Terminal Railroad Co., Mo., 299 S.W.2d 873.

Also, defendant requested, and the court gave, Instruction No. 3, which read as follows:

"The burden of proving that she was not guilty of any negligence in leaving

defendant's train at the time here involved rests upon the plaintiff, Mrs. Fennell. For that reason defendant has no duty to prove she was negligent. Unless she has proved by the greater weight of the believable evidence that she was in the exercise of that degree of care which an ordinarily prudent person would use under those circumstances, your verdict herein must be in favor of the defendant railroad company and against plaintiffs."

■ This instruction clearly placed the burden of proving freedom from contributory negligence upon the plaintiff. Plaintiff was not required to include a finding on the matter of the burden of proof in her verdict-directing instruction.

■ Defendant's last preserved point is that plaintiff's closing argument was improper. We note that the defendant's request for a mistrial was not made until all the final arguments of the case were concluded, which situation falls squarely within the ruling in Shields v. American Car & Foundry, Mo.App., 293 S.W. 77, wherein the court said, at page 78:

"In our view, the request to discharge the jury was not timely. It should have been made at the time the request was made to rebuke plaintiff's counsel for the remarks that were considered prejudicial to defendant's rights."

■ Moreover, defendant's request for a mistrial was general and did not pertain to the specific parts of the argument of which he was complaining. Our Supreme Court has stated, in Minor v. Lillard, Mo., 306 S.W.2d 541, that where the defendant stated, "We are objecting to all that line of argument," the court therein held that such an objection will not suffice where all of the argument was not erroneous or claimed to be. We rule this point against defendant.

■ Defendant's remaining point claims error in excluding certain evidence offered by defendant and admitting other evidence offered by plaintiff. This point has been abandoned inasmuch as defendant failed to carry it forward and develop it in the argument. V.A.M.R. Civil Rule 83.05; Catanzaro v. Duzer, Mo.App., 329 S.W. 2d 257; Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015.

Finding no reversible error, the judgment is affirmed.

WOLFE, Acting P. J., and ANDERSON, J., concur.

RUDDY, P. J., not participating.